IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Wells Fargo Financial Leasing, Inc., | ) | C/A No.: 3:09-1752-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Piggie Park Enterprises, Inc., d/b/a | ) | |
| Maurice's Gourmet Barbeque Pit-Stop, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter comes before the court on the motion of plaintiff Wells Fargo Financial Leasing, Inc., for summary judgment [dkt #23]. On February 4, 2010, the court heard oral argument and took the matter under advisement. This order serves to announce and memorialize the court's ruling on the pending motion. For the reasons stated herein, plaintiff's motion for summary judgment is granted.

I.    Factual and Procedural Background

Defendant Piggie Park entered into an Order Agreement and Lease Agreement (the "Agreement") dated December 11, 2007, with Ricoh Business Solutions ("Ricoh") for the leasing of certain office equipment, including, among other things, copiers. The Agreement required Piggie Park to make sixty equal monthly payments of $1,590.15, plus applicable taxes, to Ricoh for leasing of the equipment. The Agreement contained an acceleration clause in the event of Piggie Park's default, such that Ricoh as the lessor could declare the entire balance of the unpaid lease payments for the full term immediately due and payable, together

with interest at 18% per year, plus all expenses, including reasonable attorneys' fees.

The Agreement is, according to its terms, a finance lease as defined in Article 2A of the UCC. As a finance lease, once the lessee accepts delivery of the goods, the promises of the lessee to the lessor become irrevocable, including its promise to make lease payments. See S.C. Code Ann. § 36-2A-407 (Supp. 2009). Even if the goods fail to perform as expected by the lessee after they are accepted, Article 2A requires that the lessee continue to make payments to the lessor, with the lessee able to pursue remedies against the supplier or manufacturer of the goods. See S.C. Code Ann. § 36-2A-407 (Supp. 2009).

The Agreement was signed by Chris Bennett on behalf of Piggie Park. Piggie Park accepted delivery of the copiers and equipment on December 20, 2007, as acknowledged in the signed and executed Certificate of Delivery and Acceptance. Subsequent to its execution, the Agreement was purchased from Ricoh by plaintiff, thereby making Wells Fargo the financier of the transaction, and the recipient of the lease payments. Piggie Park failed to make all of its lease payments, and after notice of default to Piggie Park and its failure to cure, plaintiff initiated this action to collect the outstanding lease payments and costs.

Plaintiff filed the instant motion, contending there are no genuine issues of material fact such that it is entitled to summary judgment. Piggie Park filed an opposition to the motion, arguing that Bennett was not authorized to sign the Agreement on its behalf. Although Piggie Park contends that the Agreement is void for Benentt's lack of express or implied authority, it does not dispute that the copiers were delivered to it and that it

immediately began using the copiers. Piggie Park further asserts that it began immediately having problems with both copiers including jamming, streaking and production of unusable copies, and that it made numerous service calls to have the copiers repaired without success.

Alternatively, Piggie Park contends that if the Agreement were enforceable, that it rejected or otherwise revoked acceptance of the copiers for their failure to conform to the Agreement. Specifically, in a letter dated May 8, 2009, Maurice Bessinger, Chairman of the Board of Directors of Piggie Park, wrote to Larry Wilson of Ricoh, rejecting the copying equipment, revoking acceptance of the copying equipment and cancelling the Agreement. That letter stated that "[w]e will also pay our leasing amounts up and until May 15, 2009, which will be considered the end of our contract."

Under S.C. Code Ann. § 36-2A-509, "if the goods or the tender or delivery fail in any respect to conform to the lease contract, the lessee may reject or accept the goods or accept any commercial unit or units and reject the rest of the goods." Rejection must be made "within a reasonable time after tender or delivery of the goods and the lessee seasonably notifies the lessor." Id. Piggie Park argues that a question exists as to whether the rejection was within a reasonable time such that summary judgment is not appropriate.

II. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well-established that summary judgment should

be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

III.   Discussion

The court finds as a matter of law, based upon the admissions of Piggie Park, through its Chairman of the Board of Directors, that no genuine issue of material fact exists as to the existence of the Agreement. Bessinger's letter dated May 8, 2009 to Ricoh attempting to revoke acceptance of the copying equipment conceded the existence of Piggie Park's obligations under the Agreement and acknowledged its obligation to pay the leasing amounts, at least until May 15, 2009, according to Bessinger.

Independently, the court finds that Bennett had apparent authority, if not actual authority, to enter into the Agreement. It remains undisputed that Piggie Park did not inform

Ricoh or Wells Fargo that Bennett lacked the authority to execute the Agreement until filing its answer in this lawsuit on July 22, 2009—more than 19 months from the date it accepted delivery of the copiers. The court finds that Piggie Park's acceptance of delivery of the copiers, continued use of the copiers, utilization of the maintenance agreement provision in the Agreement, expectation that Ricoh honor the maintenance agreement, and payments according to the lease terms are all inconsistent with Piggie Park's contention that the Agreement was void ab initio for Bennett's failure of authority to bind the company. Rather, even if Piggie Park had not specifically authorized Bennett to bind it in the Agreement, Piggie Park's subsequent actions ratified the Agreement.

In South Carolina, ratification means "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent." Lincoln v. Aetna Cas. & Surety Co., 386 S.E.2d 801, 803 (S.C. App. 1989). Ratification requires three elements: (1) acceptance by the principal of the benefits of the agent's acts; (2) full knowledge of the facts; and (3) circumstances of an affirmative election indicating an intention to adopt the unauthorized arrangements." Id.

The court finds that Piggie Park accepted the benefits of the Agreement by having accepted delivery of and used the copiers for over 500 days. The court also finds that Piggie Park had full knowledge of the facts surrounding the lease transaction as the Board of Directors commissioned Bennett to procure a new lease for copiers, and Bennett admitted that the Board and its Chairman knew of the transaction. Piggie Park's intention to adopt the

Agreement is evidenced by its payments per the terms of the Agreement, its retention and use of the copiers, and its utilization of the maintenance provision in the Agreement. These actions demonstrate Piggie Park's ratification of the Agreement.

Finally, the court rejects Piggie Park's argument that its letter dated May 8, 2009 timely rejected the copying equipment pursuant to S.C. Code Ann. § 36-2A-509. Rejection of goods under S.C. Code Ann. § 36-2A-509 "is ineffective unless it is within a reasonable time after tender or delivery of the goods and the lessee seasonably notifies the lessor." While defendants argue that there are no South Carolina lease law on point, the court finds persuasive the reasoning in Porter Bros., Inc. v. Smith, 325 S.E.2d 588 (S.C. App. 1985), cited in the Reporter's Comment to section 509, in which the court found that a rejection of goods after two months was not timely. Because Piggie Park experienced problems with the copiers from almost the very beginning, but did not attempt to reject the goods for over 500 days, the court finds as a matter of law that Piggie Park's rejection was not timely and therefore ineffective under S.C. Code Ann. § 36-2A-509.

IV.   Conclusion

For the foregoing reasons, the court grants plaintiff's motion for summary judgment [dkt. #23]. The Agreement is valid and enforceable as against Piggie Park. Plaintiff is instructed to file by February 25, 2010, an affidavit of the lease amounts remaining due under the Agreement, including interest, costs and reasonable attorneys' fees. Defendant may file an objection to the fees affidavit within 7 days of its filing. Thereafter, the court will issue an order on the amount due to plaintiff by Piggie Park.

IT IS SO ORDERED.

                                                                                    *s/Joseph F. Anderson, Jr.*

February 5, 2010                                   Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge